| | |
|---|---|
| Denver District Court<br>Denver County, Colorado<br>Court Address: 1437 Bannock Street, Room 256<br>Denver, CO 80202 | FILED IN DENVER DISTRICT COURT<br>JUN - 4 2025<br>DENVER, COLORADO<br>COUNTER CLERK ___<br>COPY |
| Plaintiff(s): Rebex Kai Vierge Kellam<br>v.<br>Defendant(s): US Fertility and Ivy Swaffer | ▲ COURT USE ONLY ▲ |
| My Name: Rebex Kai Vierge Kellam<br>Street Address: 3243 S. Parker Rd Apt 507B<br>City: Denver State: CO Zip: 80014<br>Phone: (719) 888-0308<br>Email: RKellam@protonmail.com | Case Number: 25CV441<br>Div.: Ctrm: |

**DISTRICT COURT COMPLAINT**

$

1. A Jury Trial?

   Do you want a Jury? *(Check one)* ☑ - No ☐ - Yes *(extra fee)*

2. I can file this case in Denver, because: *(Check all that apply)*
   - ☑ The Defendant lives in Denver.
   - ☑ The Defendant company does business in Denver.
   - ☑ The actions took place in Denver.

3. Defendant Information

   The contact information for the people responding to the lawsuit is:

   *Registered Agent - The person that will accept legal documents for a company.*
   *Find a company's Registered Agent at www.sos.state.co.us*

   - Defendant 1 Name: US Fertility, LLC

- Registered Agent: *(if a company)* N/A
- Street Address: 9600 Blackwell Rd, 5th Floor
- City/State/Zip: Rockville, MD 20850

- Defendant 2 Name: Ivy Swaffer
- Registered Agent: *(if a company)* N/A
- Street Address: 8959 E 40th Ave Suite #180 - SGF
- City/State/Zip: Denver, CO 80238

- Defendant 3 Name: ______
- Registered Agent: *(if a company)* ______
- Street Address: ______
- City/State/Zip: ______

*List any additional Defendants on a separate piece of paper.*

4. Grounds

List the legal ground(s) that allow you to start a lawsuit.

*These are often called the Claims for Relief or Causes of Action.*

- Claim 1 - See Complaint

  Against whom? *(Check one)*
  - ☑ All Defendants. Or
  - ☐ Just These Defendant(s): ______________________.

- Claim 2 - See Complaint

  Against whom? *(Check one)*
  - ☑ All Defendants. Or
  - ☐ Just These Defendant(s): ______________________.

- Claim 3 - See Complaint

  Against whom? *(Check one)*
  - ☑ All Defendants. Or
  - ☐ Just These Defendant(s): ______________________.

- Claim 4 - See Complaint

  Against whom? *(Check one)*
  - ☑ All Defendants. Or
  - ☐ Just These Defendant(s): ______________________.

*List any additional Claims on a separate piece of paper.*

5. Facts

These are the facts of my case:

*The facts must qualify you for the legal grounds you are raising. Attach additional pages as needed.*

1) See Complaint

2) See Complaint

3) See Complaint

4) See Complaint

5) See Complaint

6) See Complaint

7)

8) ______________________________

9) ______________________________

10) ______________________________

11) ______________________________

12) ______________________________

13) ______________________________

14) ______________________________

15) ______________________________

6. Request for Relief

What do you want the Court to do?

See Complaint

7. Signature

I declare under penalty of perjury that this information is true and correct.

Respectfully submitted on *(dated)* June 4th, 2025, by

Print Name: Reber Kai Vierge Kellam Signature: Reber K. Kellam

**You must properly serve this document on everyone you are making claims against. There are special rules you must follow to do this.**

USFertility

# Employee Counseling / Disciplinary Action Form

| | | | | | |
|---|---|---|---|---|---|
| Name: | Reber Kellam | Department: | Clinical Support | Date: | 05/22/2025 |
| Incident Date: | | Time: | | Location: | Central Park |

Description of Issue:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Tardiness or Absenteeism | | Safety Violation | | Inappropriate Conduct | X | Policy/Procedure Violation |
| | Clocking In/Out Issues | X | Substandard Performance | X | Other: Communication/Professionalism Performance | | |

Previous Action Taken:

| | | | | | |
|---|---|---|---|---|---|
| X | Coaching | | Written Warning | | Termination |
| | Verbal Warning | | Final Warning | | Other: |

Action Taken Today: ****Anything above a verbal must be approved by HR****

| | | | | | |
|---|---|---|---|---|---|
| | Coaching | | Written Warning | X | Termination |
| | Verbal Warning | | Final Warning | | Other – Demotion |

Explanation:

*On 02/07 a meeting was had with myself, Lauren McKinney, Reber and nurse Caitlynn Finn regarding recent disagreements between them both and workflow issues. IT was discussed that they needed to work with one another on face-to-face communication instead of going back and forth via teams or tasks in FERT. We discussed that it is also unprofessional to argue with one another in a patient task as this is linked in their chart. We also reviews being mindful of each other in the office and not playing music over an agreed tolerable volume, closing the door when it is hot in the office as well as loud and excessive conversations not pertaining to or disrupting work. We discussed that although the previous compromise per Jodi for Reber playing music openly since nurses have been added to the CP space was to wear headphones that the current over the head ones were still too loud for surrounding staff. It was agreed that individual ear buds could be used so she could still use music while being mindful to others. We discussed using kinder attitudes towards one another and not ignoring each other while sitting in the same room. It was discussed that their communication and collaboration were key in patient care especially with them both being on Dr. Lersten's team. Both parties agreed to be more mindful and to work on these areas.*

*I met again with Reber on 04/22 just to touch base regarding issues presenting between her and Caitlynn after meeting with Jodi and Lauren to discuss the current workplace environment. While Caitlynn felt it might be a hostile work environment Reber stated she kept to herself, didn't feel like they have any issues and said things have been good between them. She said she thinks it would be good to know each other's workflow better because that seems to be where some of the misunderstanding and frustrations between them is. She said Caitlynn has mentioned feeling rushed too but said there isn't drama, and she likes/wants it to stay that way. We advised open communication and working with one another to understand workflow. Reber felt the conversation went well and asked to be kept out of drama and meetings.*

*On 05/02 while I was out of the office, I received emails from Nurse Caitlynn and Dr. Lersten regarding a call between a patient and Reber lacking professionalism. Dr. Lersten was able to talk to the patient to smooth the situation over however IT was unable to pull the call for review and coaching as it was not recorded.*

*I was contacted on 05/07 by Katie Bell in IT and her manager Maureen Phipps regarding a complaint issued by Reber against Katie. I was informed that Katie advised Reber in person her VPN was set up and ready to go for her remote days and if she had any issues to let Katie know and she could hop on remotely to assist her. Reber expressed appreciation and Katie left. After this Reber reported same day to Maureen that Katie hacked her system, and she could hear Katie talking in her headphones and she was now uncomfortable and creeped out. Reber stated she did not want to be monitored and did not want to interact with Katie. Maureen was able to confirm that Katie did not access anything on Reber's account or via her headphones and attempted to reassure Reber of this. It was explained that everything within the company is monitored normally but her account was not separately accessed by Katie.*

*I had a meeting with Reber on 05/15 to go over coaching regarding workflow, professionalism, communication/collaboration with staff and patients. Reber started the meeting voicing her concerns over an incident with another staff member, April, the*

USFertility

## Employee Counseling / Disciplinary Action Form

*day prior coming in smelling of vape oil. Reber expressed this smell was overwhelming to the point she moved to the lab to work for the day which she stated did not help. She stated she has purchased masks and an air purifier to lessen the smell of the workplace and feels this is unfair to her and we should address it with the other employee. We discussed that I would be touching base with HR regarding the concern of potential smells in the office. It was then brought up that lunch being eaten in the office is also a concern of hers. We discussed it is a small office and unfortunately smells of food and eating in the office/at desk is not against policy and cannot be avoided. Reber requested to move to remote or GV if she could avoid these concerns there. I did let her know I did not think either would be doable as her team is in CP and the position is not full-time remote, but I would also get additional confirmation. I attempted to move the conversation to the next topic of communication and teamwork. We discussed that April did not feel Reber was approachable when she was in need of help with the PCC roll or had questions. Reber stated this was a lie and that April could teams her if she needed help and she did not want to engage in personal conversation with April. I advised still assisting with work tasks but setting politely a boundary that she did not want to engage in conversation outside of work-related needs and that I am willing to support this boundary as long as it is professional and polite. We discussed that since they sit next to one another in the office verbal communication is needed as well and not just electronic communication. Reber stated she didn't want to talk to April if she had to risk getting cancer breathing in her smell. We discussed that we had moved on from the topic of the vape smell and were currently discussing teamwork and communication, Reber stated again that she wanted to work in her own space or outside of the office as the environment is unfair to her and she felt everything was better before we began bringing all of these people into the office. I discussed with her the other people in the office are her fellow co-workers and are a part of the same team for patient care. We discussed unfortunately I do not have a secluded place for her to sit in office, and we do need everyone in the team to work together and be considerate of one another. She stated she wanted to be left alone by other staff, did not want to engage and just wanted to wear her headphones to not be involved in their personal conversations.*

*I discussed that we are a team and need to be able to work with one another. I advised due to issues with myself, IT and other staff being able to get Reber's attention when needed that per HR the headphone policy is one ear bud in or none. Reber stated this frustrated her as she is a good worked and it does not affect her work. I confirmed I do agree she is a good worker however there have often been times where staff is having to wave to get her attention because she does not hear them after multiple attempts of verbal communication. I again reviewed the policy to which Reber stated she would not be following it. I advised since it was being discussed that if I saw her going against policy in the future it could result in a write up. She stated she would then get ear buds so small I could not see them or just take one out when she saw me coming. I advised again this would still be against policy and would result in a write up should it happen to which she responded then I will need to be written up. Reber wanted to know who her supervisor was and I advised it was myself. She stated it was Jodi and I explained Jodi was the PCC supervisor and is no longer with SGF and I am the in person CP office supervisor. I did state I could have my supervisor Yvonne review these matters with her as well if she would like and Reber declined stating she did not want to have any meetings with anyone and they would not be necessary. She expressed frustration and felt as though these issues were only being brought up due to the incident with April that day prior. I advised this was not the case and there were workflow items, professionalism in responses to patient messages and staff, a patient call on 05/02 and the incident with IT that I wanted to review and our meeting was confirmed prior to the incident the day before. Reber voiced concern that she did not feel she had job security and that she was not comfortable with our conversation at this point. I advised at this point to end our meeting until I could touch base with HR and could provide an environment to where she did feel comfortable proceeding with this conversation. I advised her to reach out to me with anything needed in the meantime and she hung up the call.*

*On 05/20 at 2:28pm Lauren McKinney teamsed me regarding concerns of Reber taking an office stool and placing it in her car without discussing it with anyone prior. Lauren confirmed with Reber we cannot remove office furniture from the office and especially without approval first. Reber was advised if she did not have proper items at home to work on her remote day it may be best to come in office instead until the necessary items are obtained. Lauren stated Reber rolled her eyes and said she would return the stool. At 5:13pm Lauren followed up with me to confirm the stool was not brought back in and the request to do so ignored.*

*On 05/21 I reached out to Reber to set up a follow up meeting between her, myself and Jazmin in HR regarding our last conversation per Jazmin's request. Reber requested to move the meeting and then emailed Jazin and I stating she did not want to attend this meeting as she had no desire to and felt it was unnecessary. She advised she would follow up with someone else in HR whom she planned to meet with next week and would correspond with them instead. Jazmin did confirm we would be*

USFertility

## Employee Counseling / Disciplinary Action Form

*keeping the meeting to which Reber again stated she did not wish to attend but would if necessary and felt she did not have much to say regarding conversation points of the meeting.*

Goals/Corrective Behavior:

Employee Comments

You are formally being warned to bring to your attention the severity of this situation. Failure to correct this behavior and / or further violation of company policy will result in additional disciplinary action up to and including discharge. By signing below, you acknowledge that you have received this notice. Your signature does not necessarily indicate agreement.

Employee: ______________________ Date: ____________

Supervisor / Manager: ______________________ Date: ____________

Human Resources: ______________________ Date: ____________

Denver District Court
1437 Bannock St, Denver, CO 80202
(303) 606-2300

**Plaintiff** : Reber Kai Vierge Kellam
3243 S Parker Rd Apt 507B
Denver, CO 80014
(719) 888-0308
Rkellam@Protonmail.com

**Defendant**(s): US Fertility, LLC .. et al
9600 Blackwell Rd, 5th Floor, Rockville, MD 20850
844-640-6400

## Statement of Jurisdiction

This court has *Subject Matter Jurisdiction*, 28 U.S. Code § 1331 because of federal question of Title VII of the Civil Rights Act of 1964 or *could* hold subject matter jurisdiction under 28 U.S.C. § 1332(1) because there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000", if need be. This court has *Personal Jurisdiction and Territorial Jurisdiction* C.R.S § 13-1-124(1)(a)(c) because the Defendant is engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, by transaction of any business partnership within this state as **Shady Grove Fertility (SGF)**. Under Title VII of the Civil Rights Act of 1964; a claim was reported to the EEOC on Sunday, May 25th, 2025 / Claim# 541-2025-03409.

## Compliance

The following complaint complies with the Colorado Rules of Civil Procedure.

## Statement of the Claim

The Defendants are responsible for a sum of $76,700, for wrongful termination, breach of contract, defamation, flagrant and morally unacceptable conduct, emotional distress, lost wages, lost benefits, lost future earnings, job search costs, court and service cost, vicarious negligence, retaliation and race discrimination, harassment

## Facts

I was hired by US Fertility to work for a business partnership organization called Shady Grove Fertility (SGF) to begin working on Monday, October 28th, 2025 and my employment was terminated, effective Thursday, May 22nd, 2025. According to the Employee Counseling / Disciplinary Action Form, I was dismissed due to substandard performance, policy/procedure violation, and other communication/professionalism performance. The Defendants have claimed that their reasoning for terminating my employment was due to loud and excessive music, "hostility "or unfriendliness, lack of professionalism, seeking help for suspicion of harassment to IT, and theft of a chair stool, by Assistant Supervisor Ivy Swaffer.

No complaints regarding the Plaintiff were made from 10/28/2024 – 02/6/2025 (3 - months), until Ivy Swaffer took over assistant supervisor position for Sydney Burron and RN Caitlyn Finn transferred to the SGF Central Park office, and until 9-days after my 90-Day Employee review, held on Wednesday, January 22nd, 2025, was effective and submitted. *The Defendants claims are of speculation, not matters of fact.* I am filing this court complaint for the following reasons:

I received a copy of the US Fertility Employee Handbook as an onboarding item I was asked to electronically sign upon reading. I signed an updated copy of the Handbook Acknowledgment on Monday, February 3rd, 2025, 4 days before the Defendant's first claim. I had to acknowledge that I was expected to read, understand, and adhere to the Company policies documented in the provided handbook while being onboarded as staff.

Paragraph 1 – "Arguing "in a Patient's chart

**Argument** – A verbal or non-verbal exchange (back and forth) of opposite views, typically heated or angry.

First, the assistant supervisor, Ivy Swaffer claims that it was discussed that there was an issue due to lack of face-to-face conversation and "argument" within a patient's chart, heat in the office, and loud excessive noise on February 7th, 2025, just 9-days after my employee 90-Day Review, was completed by Manager Jodi McFarland and accompanied by Haley Dallin. Ivy Swaffer's termination is built on race discrimination and workplace harm through intentional write-ups with favoritism for Caucasian female Caitlyn Finn and of speculation.

I became 'unprofessional" in Ivy Swaffer's view, just 9 days after my review and her claims are false and out of context. No conversation about my SGF provided headphones were mentioned to me and no complaints from anyone else were brought to my attention. I am just finding out about most of her first paragraph. I figured out that the work headphones were loud on *my own*, so, I brought my own Bluetooth headphones to work. My music was at 15 -20 out of 100 or less if my headphones were not connected for a very short period of time. I am not an inconsiderate person who does not know how to professionally share a workspace with others. The Caucasian nurse's demands were private, unreasonable, and carelessly eager to report, if what Ivy's saying is factual.

The nurses would almost immediately ask me to turn it down, even if it was playing from the computer for 15 seconds or less *(and this only happened twice)* while I connected to Bluetooth or plugged in the headset. It was extremely hypercritical, because the other Caucasian nurse, Taylor Collins, would have her Microsoft Teams meetings without headphones. Jodi, my now retired Supervisor/Office manager, never spoke to me about headphones. It was never "hot" in that office. We all sniffled, and our noses watered, daily and audibly because it's a medical office and very cold. Next, there was no "argument" in a patient's chart. The RN Caitlyn electronically tasked me to respond to a patient with a medical question, and I sent her a *private* response of something along the lines, "*I am a communication professional not medical, I will not respond to the*

*patient's medical question. You are free to unprofessionally ignore her* (the patient)." I had had enough of RN Caitlyn expecting me to respond to the patient, while she ignored her duty to answer the patient's medical questions, avoiding her role. Caitlyn leaped out of her seat and nearly ran to tell Ivy Swaffer. I did not think much about it at the time. The claimed "argument" was a factual 2-sentences long and no response from Caitlyn. Ivy asked me to speak with her in person shortly after Caitlyn returned and she told me *I did nothing wrong* and that I should just not say it in the patient's chart. The was the end of the conversation, in which I understood.

The Defendant's false claims cannot be proven that plural "disagreements" took place, that verbal conversation was *not* had between Caitlyn and I, that my "excessively loud music" was in fact loud and excessive, that the office was "hot" when I closed the door, and the Defendants cannot prove that I "argued" with Caitlyn in a patient's chart. This is all taken out of context and exaggerated because Ivy was hardly around. It is discrimination favoring RN Caitlyn Finn because although false, my employment was terminated based upon no fact.

Paragraph 2 - Caitlyn's Feelings and Workplace Environment

**Hostility** - Strong opposition, ill will, or unfriendliness, often involving aggressive or antagonistic behavior.

Next, the Defendant's claimed that there was workplace, "hostility" between Caitlyn Finn and me. ***This claim is untrue and not of accuracy.*** It was never expressed to me or in my awareness that there was "hostility," between Caitlyn and me. There is no evidence of hostility from me toward Caitlyn and the Defendant will not be able to support that claim. I always went to work and focused on what I was doing, not gossiping and socializing about personal matters.

It never stopped me from excelling at my work performance, which later made Caitlyn feel "rushed" because a lot more patients were ready for treatment. It was my job to get the patients through the pre-screening process. It was never my intention to make anyone feel threatened with hostility because I worked and got patients through pre-screening effectively.

I never regarded Caitlyn as someone to be hostile or unfriendly with and Caitlyn was *never friendly toward me*, while my headphones were on or off. Caitlyn never mentioned being intimidated or threatened of me or feeling aggression from me during the meeting held on April 22nd, and I was expected to display more friendliness with Caitlyn while she never expressed compassion or friendship toward me. Also, even if I laughed and smiled, Ivy Swaffer was absent and would not have witnessed and friendly display. It is not against the policy for me to work quietly. Nor is it policy that I must be friendly, laughing, giggling, sharing personal life information, or whatever the expectation was. I should not be held accountable for Caitlyn's feelings, in which she took no responsibility for and did nothing to challenge her own feelings of hostility. Caitlyn was not friendly, but I would not claim a hostile or insufferable work environment. I remember reassuring Caitlyn in front of Ivy Swaffer and Lauren McKinney, that I am not personally attacking her with my work ethic and have no negative feelings toward her. I reassured her that my silence and focus was not because I am a negative or mean person and I prefer to do *my own* work, because I am not medically trained as an RN.

Ivy Swaffer and Lauren Mckinney offices are *not* located where Caitlyn and my desk were. Therefore, this is an unreasonable employment standard because they cannot prove that I did not verbally speak to Caitlyn. They cannot set a standard on verbal words per day or even measure their strange standard. Furthermore, Caitlyn has *never* initiated friendly conversation with me. Their standard of verbal communication has a one-sided expectation to accommodate Caitlyn's negative feelings. Lauren Mckinney and Ivy Swaffer are accountable for failing to communicate to me how they expected me to meet their unmeasurable standard that is not US Fertility policy. *Caucasian* nurse Caitlyn Finn was not held accountable for her share of the "hostile" or unfriendly work environment, in the same way that the African American Plaintiff, Reber Kellam was somehow expected to. This caused workplace stress, workplace harm, and hostility by Ivy Swaffer, Lauren Mckinney, and Caitlyn Finn, *not caused by Reber.*

The Defendant notes that Caitlyn felt "rushed," but there is no drama. Caitlyn expressed to me that patients were rushing her to begin treatment, when she has 1-week to contact them to begin. I spoke to Lauren and Ivy Swaffer via teams'

message because I did not understand Caitlyn's sudden and unfriendly approach and how it was my fault for her personal feelings, not factual interpretation. After speaking to Lauren, I understood that Caitlyn was feeling rushed because the patients thought Caitlyn would contact them *right away*. Apparently, she believed that I was telling patients she would contact them in 2 days time. I did not inform that to patients. I began sending the tasks to contact the patients with a 1-week due date instead, and she seemed fine with that. If patients asked, I was sure to tell them to allow Caitlyn 1-week to make "preparations." No drama or continued complaints were ever brought to my attention again regarding Caitlyn's feelings of pressure. The Defendant's claims of hostility is speculation, race discrimination for unequal expectations, and not matters of fact.

**US Fertility - RELATIONSHIPS IN THE WORKPLACE** Pg. 14 (Handbook) Any ***personal*** or intimate relationship among employees is ***permitted only if welcome and must not be made a condition of employment.*** Any such relationship must not offend or adversely affect other employees nor interfere with any employee's job duties (including the people involved) or result in inappropriate favoritism.

## Paragraph 3 – Unprofessionalism

Next, it is mentioned that my employment is terminated due to a conversation between me and a patient, reported by RN Caitlyn and Dr. Lersten. It's said that they pulled the conversation recording and coaching to me was provided. Ivy Swaffer's words remain false and exaggerated out of discrimination. I emailed my supervisor, Yvonne and CC'd Dr. Lersten and no response was made to me (see the copy of the email filed). Ivy Swaffer never spoke to me regarding the patient and the issue. Coaching was not provided to me, as Ivy Swaffer claims but provides no detail or dates when, how, and what was said between us during this claimed coaching. I continued to respond to the patient's portal messages and keep her informed regarding her results, professionally.

On May 2nd, 2025 at 4:17PM, I sent the email and there is no evidence of disrespect and bad customer service from me, from a patient. Ivy Swaffer somehow does not have much to say on the matter, a matter finally involving my

work performance and not *Caucasian* women's speculative feelings that are relative and a personal matter; *not based upon factual evidence.* There are no direct quotes from the patient or provided evidence that emails from Dr. Lersten and Caitlyn Finn happened. Just an email from me sent to Yvonne and Dr. Lersten.

I spoke with the patient while Caitlyn was in the room. There is no evidence that I did not do my role in contacting the right people to help the patient or that she was disregarded or disrespected. I did not know that this would be brought up or that the employers felt I did something wrong. Again, my email regarding the patient was ignored by both Dr. Lersten and my supervisor and never brought to my attention by Ivy Swaffer, until now. No coaching was provided on how to remedy the issue if there was an issue. The Defendant's will not be able to prove a lack of professionalism and *again*, it's claimed that I was reported by Caitlyn Finn for her discriminative perspective of me, outside of my awareness, and in Ivy's absence. Favoring the perspective of others as a reason to have me dismissed. I never raised my voice toward the patient or even cursed. I told the patient the truth, I am not involved, and I do not know what's going on. *The Defendant's claim of lack of professionalism is speculation to have my employment terminated, not a matter of fact.* No evidence of violation of US Fertility's code of conduct and that I was not sensitive to the patient's needs.

## Paragraph 4 - Gossip and Harassment/ Security Incidents

Next, there was a situation with the IT representative and *Caucasian*, Katie Bell. Katie and I spoke but our conversations were always small talk. She'd ask me if I need anything and I would always tell her, "No, I'm okay." I was told that my previous supervisor, Jodi McFarland, would be retiring and I asked Jodi to approve of my remote days early because she was my supervisor and I didn't know when they'd hire for the position. I put in an IT ticket and Jodi approved of it. I was helped by IT Tech, Justin, and we had a meeting to show me how setting the VPN would work and he set up my remote access in a 20-minute meeting over my work telephone on Thursday, April 24th, 2025.

On Friday, May 2nd, 2025 (1-week later), Katie came into the office and told me

that she saw my ticket and set up my remote work access and I "should be good." I said "okay," because I knew it wasn't true, Justin had helped me a week ago and *the ticket was already closed*. I continued working and suddenly, and *for the first time*, out of my wired headset with a microphone, I heard Katie's voice say, "Pee," and I actually did have to use the restroom. I heard her clearly because I was listening to instrumental music on YouTube. No words or lyrics were included in the Lofi playlist I was listening to. Her voice came out of the left headphone of my work provided headset, and it sounded like she was part of the instrumental, not near me in person. I reversed the song, and no, a voice was not there.

So, feeling confused and violated, I messaged Justin and told him about my concerns on May 2nd at 11:59AM. Justin was the only person I told this concern or suspicion to. However, *Caitlyn* was in the room, but I assumed she would stay out of things. Caitlyn quickly stood up-- as she does when upset – and went towards Ivy's office while I spoke to Justin. I asked Justin to keep it private because I just want to be sure and stop the harassment immediately, not get Katie or myself in trouble for suspicion. *No IT ticket was made by me or Justin* and *no public announcement of It was expressed intentionally*. I sat behind my desk and watched Justin help change my setting to help me feel better.

Katie Bell messaged me at 1:36PM, the same day, because she had *somehow* found out within 1 hour and 36 minutes of my suspicion. She expressed concern that I made it public, but I did not. *Justin changed my settings on May 2nd*, 2025 and told me that some people are immoral and do not have respect for privacy. We spoke on my personal cellphone, so there is no call to be pulled or "publicly," recorded to IT, because Justin understood I wanted it to be private. *Caityln may have gossiped but it is unexplained how Katie Bell was made aware*, and there is no evidence that Kaie Bell left the Central Park office after her and I spoke in-person.

Afterwards, my computer settings or apps would change every day while I was away at lunch. However, I no longer heard Katie's voice, so I kept the suspicious activity happening, still, to myself. There was no need to contact Justin again to catch her in the act and for him to investigate because I didn't hear her anymore. Ivy's disciplinary action form does not mention that Justin disclosed to

Katie, but Katie's manager named Maureen Phipps brought this to Ivy Swaffer's attention on May 7th, 2025. Justin stated that he knew how to catch the act while it was presently happening. I did research on how to find proof, and there was no remote log information. It was clean and did not show any remote access data. Justin remoted into my account prior and serval times to help me, so there should have been *some* records, not empty. However, this is all a retaliation for asking for accommodations from an uncomfortable suspicion, which is not against policy. *There could be no evidence that Katie did not, and that I was mistaken and in violation of any policy for reporting a concern.* This is the third incident reported by RN Caucasian Caityln Finn, as a reason for my employment termination, in Ivy's absence. Caitlyn is the only way Katie would have known, unless my was still being monitored/eavesdropped on remotely while on my personal cell phone with Justin.

Ivy Swaffer quotes my teams message to Justin within her form. I did not have full administrative permission to access all computer features and settings on my SGF work laptop. Their claim is discrimination for reporting a suspicious conflict of interest and in good faith that was never publicly recorded, by me, that harassment took place. Mauren Phipps is not said to be in the Compliance department or part of the Technology *Security* Team, who is responsible for investigation situations as such. When Ivy Swaffer heard the news, this should have been reported in an official incident report according to US Fertility policy. It may not be US Fertility policy for or Maureen – IT Service Desk Manager -- to, "confirm.. that Katie did not access anything on Reber's account." Yet again, Caitlyn was involved, and I was not coached, trusted, or aware that Ivy Swaffer was informed of the situation and how. Also, the policy was not followed by Ivy Swaffer at the Defendant's conflict of interest.

US Fertility says that *every* employee has a duty to report harassment if they *detect or even suspect violations or incidents, immediately by completing an incident report.* The Defendant's must provide evidence of an incident report, or *Caucasian* Ivy Swaffer, *Caucasian* Katie Bell, and *Caucasian* Maureen Phipps are in violation of US Fertility's Acceptable Use Policy for not filing one before accessing my computer to confirm remotely. *African American*, Reber's employment was terminated for reporting, non-publicly, my concerns to Justin;

which there is no way Katie should have known unless Caitlyn gossiped. Employees *can* make a report without fear of retaliation. I was not protected against unnecessary disclosure. I reported the situation out of discomfort and workplace stressors of what I heard but in good faith and truth and I did *not* unlawfully or intentionally lie about Katie's actions. I was discriminated against for confidentially reporting harassment to Justin while in the present company of, Caitlyn Finn.

I am not in violation of US Fertility's Acceptable Use Policy. However, this is all speculation, and reports should be made to the *US Fertility Information Security Team*, which Maureen, Katie, and Ivy are not said to be a part of. US Fertility personnel who detect or suspect violation must immediately file an incident report. If no proper report was filed, this claim for my termination Is all speculation and breach of US Fertility contract by all those who were made aware and pursued an improper investigation, in which evidence may have been deleted. If Ivy Swaffer cared, instead of focusing on retaliation and discrimination, when she heard the news, she would have filed an incident report to the Information Technology Security Team, and *only then a proper investigation may take place,* per US Fertility policy. Which in good faith, I'm okay with being proven wrong with evidence that includes dates. *However, this does not prove that I was not harassed and mistaken*. This Information regarding acceptable use was provided to me as an onboarding document, signed by me on October 16th, 2024. This is another incident reported by Caucasian RN Caitlyn Finn, in Ivy's absence, and favored by Ivy as a reason to terminate my employment. Ivy was not in office or at SGF Central Park that day, again.

**US Fertility - EMPLOYEE CONDUCT AND WORK RULES** Pg. 22 (Handbook)

To provide employees with some guidance concerning unacceptable behavior, the following are examples of conduct that should not take place in the work environment:

• Malicious gossip and/or spreading lies, engaging in behavior that creates discord or disharmony in the workplace, interfering with another employee on the job, or restricting work output or encouraging others to do the same

## Paragraph 5 - Discrimination for Reporting Issue

Next, more recently (*7-days later from paragraph 4*) on Wednesday, May 14th, 2025, Ivy Swaffer messaged me telling me that she'd like to "touch base" and schedule a meeting with me while I was remotely working from home. She never told me what the meeting was about. I did not receive prior "coaching" during the meeting as she claims, but instead, I was put into a situation where I told her I need accommodations as an employee and she told me that she's been my supervisor since November and if I do not take 1-headphone out, it would result in a write up. *This was the week the upstairs construction became loud because it sounded like they were placing hardwood on the floors, hammering the ground or our ceiling*. I did not want to be exposed to more workplace stress. She said that I need to take 1-headphone out *after* I mentioned that I do not enjoy being forced into listening to a person's personal conversations and having to smell the strong odor of the woman who smokes -- that was hired by Ivy Swaffer and assigned to sit next to me, -- April Burke.

April seems like a nice person, but she loves talking about her family, personal issues, and gossiping about what she has seen and heard from the other SGF clinic. Her personal smoking and chitchat breaks were more than anyone would expect. I had to quickly pick up a patient phone call to get out of reviewing additional photos of her children. According to Ivy, April supposedly claimed that I refused to help her. Viewing photos of a co-worker's personal family is not my job or responsibility. I expressed that April comes into work *every day*, smelling of cigarettes or electronic cigarette vapor, around April 21st, 2025, to Ivy Swaffer in person. I informed her before purchasing face masks on April 23rd, 2025, and an air purifier on May 16th. 2025 from Amazon. The air purifier made it, so I did not have to wear a mask to prevent myself from coughing and breathing secondhand smoke from April's frequent Nicotine breaks. I never told Ivy Swaffer that I would refuse to work or help my co-workers. *Never*. She misquoted me and there is no evidence that I refused to cooperate or created a hostile work environment, because it's speculation to have my employment terminated. And no one has ever had to wave at me for my attention because I could hear them say, "Reber." My back was turned from the entrance so, waving would be pointless. *I told Ivy that I was now*

*uncomfortable with our conversation because she seemed to want to expose me to workplace stressors, intentionally. Immediately and possibly upset, she prompted us to end our conversation.* Ivy Swaffer is not being truthful and has had my employment terminate out of retaliation and discrimination because of a lack of supervisors available to hear my concerns unbiased. *The PCC Supervisor role is non-existent.* The Defendant cannot prove that there was a lack of teamwork, and her claim is speculation, discrimination, an unmeasurable and unexplained standard, and retaliation. Accommodations *for me* to work remote were neglected and not mentioned again by HR or Ivy Swaffer, just termination.

Although I considered the air quality issue resolved and informed Ivy and Jazmin Krupin -- HR Generalist -- that a meeting is unnecessary regarding the issue, I was still retaliated and discriminated against for telling Ivy the truth that she is not my assigned supervisor and I do not need to be evaluated by her in a way that makes me more uncomfortable and unhappy at work. Ivy was not present at the SGF Central Park office that week to endure the construction noise, personal conversations or must sit next to (*the person she hired*) consistent and unhealthy secondhand smoke. I was advised by OSHA that it's discrimination handle by the U.S Department of Labor – Wage and Hour Division. So, a report to them was filed online, May 23rd, 2025. The following US Fertility policies were not practiced in helping accommodate me. I asked to be considered for remote work, instead and she said she'll discuss with an office manager. I was met by HR to be wrongfully terminated 1-week after, instead.

**US Fertility – SMOKING Policy** pg. 25 (Handbook)
Smoking or use of tobacco or tobacco-like products, including "vaping" with E-cigarettes (or any electronic smoking device designed to resemble a cigarette, cigar, cigarillo or pipe) is not permitted in or near any enclosed Company facility, including work areas.
- Extra "smoke breaks" during the workday are not permitted. This policy applies to employees, patients, vendors and visitors.

**US Fertility - DRESS AND GROOMING STANDARDS** Pg. 26 (Handbook)
- Good personal hygiene is expected. This includes avoiding strong odors (e.g., cigarettes, etc.) that may be disruptive or offensive to others in the workplace.

## Paragraph 6 - Workplace Defamation

Finally, On May 20th, 2025, *Caucasian* Lauren McKinney, nurse supervisor, told Ivy Swaffer that I took a chair stool from work. This is the final speculative and discriminatory situation reported before they decided to terminate my employment. Lauren saw me walk out of the office with the chair stool. I took the stool to my car to borrow until my furniture arrived for my home office space. Lauren asked me what I needed with the chair stool, and she asked me not to take it home. I was annoyed, but I responded and said that "*I will* return it from my car." I decided to message Yvonne asking if I could borrow it, while continuing to work. I did not hurry to bring the chair stool back from my car. *I did not leave the premises with the chair stool.* I returned the chair stool once the workday was over, placing it in the path of the office because Lauren McKinney made me feel confused and small in front of my co-workers by telling what I "opt" to do on my remote day in an parental and matter of factually tone, in front of the nurses. It is said in their reasoning for terminating my employment, that the chair stool was not brought back. Yvonne ignored or did not see my message, and I told her I would not *take* it (see copy of email filed). I sat on a foldable chair that night, bought from Wal-Mart in 2023, at home to do homework, *not US Fertility's property.*

Lauren Is wrong for what she disclosed to Ivy Swaffer, and did not trust or investigate. Their claim is rude, careless, and now speculation which was caused by a desire to retaliate. It's partially why I messaged Yvonne because I saw Lauren's face go blank and not care. Again, I told her myself that I would return it from my vehicle. She did not believe me; she did not listen. The scanner-less door and locked behind me, so I had to drive around the building and scan my badge to get back in. *Defaming for careless and retaliation reasons in which absolutely no evidence can be if I took their property off of the premises to my home because it's a misrepresentation and carelessly false.* Yet another situation where a Caucasian nurse's false information to Ivy Swaffer was favored – In Ivy's absence, again – and not properly investigated intentionally because she should have seen the chair stool. No text or call to me was made to verify and no one asked me about the location of the chair stool the morning of my employment termination.

US Fertility states that it is not prohibited for an individual to ***purposefully*** falsify a report, makes *misrepresentations in connection with a report*, makes false or misleading statements during an investigation. There is no evidence that I have lied under any circumstance in which my termination was determined. Both supervisors failed to investigate the accuracy of their final claim that could have prevented my employment termination.

**US Fertility - EMPLOYEE CONDUCT AND WORK RULES** Pg. 22 (Handbook)
To provide employees with some guidance concerning unacceptable behavior, the following are examples of conduct that should not take place in the work environment:
• Malicious gossip and/or spreading lies, engaging in behavior that creates discord or disharmony in the workplace, interfering with another employee on the job, or restricting work output or encouraging others to do the same

## My Final Workday – Discrimination from HR

Finally, I was told that Ivy Swaffer wanted to have a meeting with me and *Caucasian* HR Generalist Jazmin Krupin via teams. I emailed Jazmin to say that the meeting was no longer necessary because of the air purifier and my desire not to be viewed negatively. It was because these people do not know me, they hypocritically did not follow their own rules and standards, did not initiate friendly conversation with me (*headphones on or off*), they did not listen without selfish and negative or malicious intentions, bothered to accommodate my needs as an employee, or respect my privacy. Jazmin cancelled the meeting set for May 22nd, 2025, at 2:00PM, telling me,

"*Additionally, while I hear your concerns, I want to be clear that the meeting is moving forward. It is important that we have a professional space to address matters directly and ensure alignment and accountability. Participation in these discussions is expected as part of your role.*,"

Which now I understand that the meeting was my termination, not to *hear* my concerns or verify their claims. I was never allowed an opportunity to clear matters, like the chair stool. She did not hear my concerns or consider making me remote more often, as I requested as a solution to distance myself from Caitlyn's or whoever's spying and unreasonable complaining of me. They *already* decided that it was enough to just have me terminated. I was never accommodated, trusted, of given the opportunity to express something to Ivy Swaffer, which was not included in the reason to terminate my employment.

It appears that Ivy would have liked me to somehow force the perception of more teamwork that excluded the computer and headphones, when my tasks and work duties were all behind a computer. My role was Patient Care Coordinator (PCC), not MA, MD, or RN. My role took place behind a computer, no in-person interaction with patients were necessary. I was hardly required to get out of my seat to do my duties effectively for 7 months. So, their social expectations of me as a PCC were not equal to their own work habits and all on me to achieve. I don't know how I could satisfy Ivy's speculative perception, besides laughing and giggling and sharing personal information with my co-workers and speaking to people – not working -- who do not regard *me in any friendly, conversational, or caring way*. And Ivy would not have witnessed the non-electronic team work anyways.

My employment was discriminatory retaliation because I couldn't force people to like me and keep my *unmeasurable standard* of verbal words to Caitlyn and other staff, per workday. Ivy Swaffer did she coach me on how to exceed her non-policy expectation standard and how to make unwilling people like me. Because I still don't know how I was ever supposed to do that and how it was my responsibility to do so. Ivy Swaffer and Lauren McKinney were hardly physically around to even witness me and Caitlyn's interactions. So, it was Caucasian RN Lauren and Caucasian RN Caitlyn's favored words versus mine, but I never got a word. The Defendant's created an unfair, unobtainable, unexplained standard of communication expectation; while not holding Caityln equally accountable, out of discrimination retaliation.

Nurses Caitlyn Finn and Taylor Collins have never said, "Hi Reber, how are you

today?," but I do not hold people accountable to ask about how I'm doing and measure their verbal communication as Ivy Swaffer claims to do somehow. If unfriendliness is against US Fertility policy, then the RNs should be terminated as well. My headphones became an issue on May 14th, 2025 (maybe *since my settings were changed*) because I have been tired recently and not speaking or singing unnecessarily, out loud and at work lately. A person sometimes happily humming or singing and dancing in their seat does not appear hostile in my view. I was *not* expected to create and show more teamwork via emails, messages, and tasks because to her perceptive says it wasn't enough to satisfy her, but how does she measure this standard? I did not neglect my duties and co-workers' needs or patient needs. There can be no evidence of this, I am certain. I assumed everyone else was fine because no complaints were brought to my awareness. No concerns from Caitlyn, Dr. Lersten or patients were brought directly to my awareness, to correct the issue. *Ivy Swaffer has speculated and taken the events of her disciplinary action form out of context as retaliation because she did not even care to discuss all events with me or even be present for them. She trusted, favored, and used the words of the Caucasian nurses to terminate my employment.* Her form does not even list days I received multiple coaching's because they never happened. Ivy Swaffer excluded herself from *us*. Ivy Swaffer stayed to herself in her private office to train a new Financial Coordinator for the last 2 weeks, *at least.* If she received complaints from people, I was not aware or coached as she claimed she did. Open door policy was not followed, only termination by HR.

**US Fertility - OPEN DOOR POLICY -** The Company or US Fertility, recognizes and encourages employee suggestions for improving the workplace, as well as complaints, questions, or concerns. Sometimes, the best solution to a job-related problem or concern is reached through prompt discussion. Employees who wish to discuss their suggestions, problems, concerns, or dissatisfaction may contact their supervisor or Human Resources.

**US Fertility - Separation of Employment** Pg. 50 **(Handbook)**
If an employee does not provide proper notice as outlined in our resignation policy or resigns within the first year of employment, PTO will not be paid out (unless otherwise mandated by state law). PTO will not be paid to an employee who is

discharged for Just cause (unless otherwise mandated by state law).

**US Fertility - RELATIONSHIPS IN THE WORKPLACE** Pg. 14 (Handbook) Any personal or intimate relationship among employees is permitted only if welcome and *must not be made a condition of employment*. Any such relationship must not offend or adversely affect other employees nor interfere with any employee's job duties (including the people involved) or result in inappropriate favoritism.

## Breach of US Fertility Contract-

Every day, Caitlyn and the other nurses would eat behind their desk while working, against company policy. Lauren once felt the need to apologize for eating tuna fish behind her desk. Some days their food smells very burnt or just unidentifiably bad. I don't know what meal it could possibly be. One day, Caitlyn's food smelt of literal fecal matter, yes, when she walked in and I was nearly sick. Caitlyn called out 2 days after that and I overheard that she caught a stomach bug. It's written that US Fertility or "the company" *will relieve employees* of *all work duties* and provide a reasonable opportunity to take a 30-minute or 60-minute *uninterrupted* lunch period. Caityln and all other office mates ate while working, in violation of company policy. I complained about the unamusing smells of people's strange food, and my request to be accommodate by following US Fertility policy was ignored often and not applied to all staff. This is something that could have been easily and legally stopped by SGF through US Fertility policy. Lauren McKinney, and Ivy Swaffer, does *not* affirm actions to help make accommodations *for me* were taken. Their lack of concern was due to discrimination and favoritism, again.

Eventually and recently before my employment termination, and without making drama, I expressed that I would like my own workspace because people are making a lot of personal conversation, gossiping, and there were too many bad smells happening around me. I did not tell Ivy Swaffer that I would not engage with my co-workers, she is not able to prove such words. I did not tell Ivy I felt that I did not have job security, rather, I told her that it appears that she'd like me to be uncomfortable and stressed, intentionally. She wanted to end our conversation

on May 14th, 2025, after I expressed this to her. I've *never* expressed a refusal to communicate with anyone in my 7 months of employment with US Fertility or intended to make anyone feel that I was being intimidating of unapproachable. Again, am I not responsible for people's feelings of insecurity and false perceptions. I am not a "hostile" black lady with headphones that focuses on her work and her own private matters. Another claim that cannot be proven is simply speculation and for retaliation to neglectfully, intentionally, and wrongfully terminate my employment with Shady Grove Fertility.

However, I am not responsible for being unable to force people to speak to me, be kind to me, not gossip around me, not share their personal matters with the room, or appreciate me. I could never meet Ivy's unmeasurable verbal word count expectations, although I have not been in the same room with Ivy Swaffer for some time. During our recent meeting on May 14th, 2025, Ivy Swaffer complimented Caitlyn and I on working well with one another (*and nothing had changed, still had my headphones in*) and now she writes the opposite, for her convince, within the filed Employee Counseling/Disciplinary Action Form, provided to me just 1-week later. Perhaps the compliment was because Caitlyn has not reported me to Ivy for some time. I wonder if the random meeting with Ivy was to upset me for more content. *Ivy did not reassure me of her intentions, only prompted me to end the call repeatedly after I expressed my perception*. Ivy Swaffer does not mention that a meeting with April was held about her scent and gossip to help accommodate me, out of discrimination retaliation and lack of concern for *my* needs as a US Fertility employee. Also, the role of PCC Supervisor (as Ivy writes) is nonexistent and if it did, that person out be the one to speak to me regarding all issues and critique my performance, not Ivy Swaffer.

Ivy Swaffer mentions a headphone policy that she began to really want to enforce on May 14th, 2025, the week of loud construction and one week before my termination, knowing my headphones have been a staple to reduce stress and distraction for me. There were no complaints brought to my awareness before my termination date, May 22nd, 2025, and I have not seen Ivy Swaffer or have been in the same room with her, still. Within the *unsigned* termination letter, I was misquoted for Ivy Swaffer's convenience. I've also reported 4 instances of

excessive and unnecessary attention that started to feel like bullying to me personally, by *Caucasian* PCC Team Lead Haley Dallin.

The headphones were only mentioned after I expressed discomfort with April's scent and too personal and distracting chattiness. Perhaps she *did not* hear how that made her appear to be careless *of my concerns* to my request for accommodations, so I was in disbelief and asked to have a meeting with Yvonne, *both Ivy's and my assign supervisor*. However, April was visibly and publicly listed as Ivy Swaffer responsibility. I was never listed as someone under the supervision of Ivy Swaffer, and I told her this in our final conversation when she said that if 1-headphone was not removed, it would be written up. I was met by HR's Jazmin Kuprin, instead of Yvonne. Ivy Swaffer began to keep inaccurate, taken out of context, exaggerated, and falsified documentation of my interactions with other employees (*mostly office mate, Caitlyn Finn*), just 9 days after my 90-Day review was submitted, where her first, fifth, and sixth paragraphs are the falsest of them all. Ivy Swaffer and Caitlyn Finn have been discriminating against and keeping records of whatever negative thing they can try to spin against me since they arrived to the Central Park office. Ivy Swaffer came from the SGF Colorado Springs office and told me she has worked for SGF for 4-years and Caitlyn was from the SGF Greenwood Village office and I was told she moved to the Central Park office because it was closer to her home.

In 7 months of employment at US Fertility, no one has had reason to or has complained about my headphones. Not to me anyways. In 7 months, no one has called me hostile and told me that they are concerned. For 7 months, no one has scheduled a meeting to ask me *what I need*, and since *finally* expressing my needs regarding Mrs. April Burke, -- whom Ivy Swaffer hired and assigned to sit next to me, although April seemed to prefer the Greenwood Village office -- I have been terminated. There was an unmeasurable expectation for me to please everyone, but when I finally asked to be accommodated and not experience secondhand smoke, harassment, forced into uncomfortable situations, and to be left out of people's personal lives, I was terminated without warning or the opportunity to clear their false claims.

I was being discriminated against with plans of retaliation, since February 7th, 2025. *I am not required to share personal details and fake closeness for the sake of keeping my job.* I worked with headphones in, at my desk in which my back was turned from most of them; so, it's not possible for hostility towards co-workers from me to be proven. No failure to work well with others can be proven. *Her entire termination letter is discriminatory, rude and malicious to my character and the truth.*

I have not been in the same room as Ivy Swaffer for a long time. She often remained in her office, with her headphones on, and I only saw her, sometimes, when she was leaving for the day to say goodbye. She somehow concluded that my headphones are a problem for her, from a distance while she was away at the Greenwood Village SGF clinic. It was enforced that I read the employee handbook before electronically signing an enforceable document, and before being terminated I re-read an updated copy from January 2025, and *there is no headphone policy*, for which my employment has been terminated and reported to cause "hostility" in the workplace. The word headphones are not mentioned in anything I signed and was asked to read while onboarding and doing research. I expressed to Ivy Swaffer that it appears she wished to make me uncomfortable and want to leave employment with SGF because she did not listen to me, and she only made it worse by falsifying an illegitimate headphone policy.

## Termination Day – May 22nd, 2025,

Finally, I was told that Ivy Swaffer wanted to have a meeting with me and HR Generalist Jazmin Krupin, on Wednesday, May 21st, 2025. I expressed that the meeting was no longer necessary because of the air purifier and my desire to not be viewed negatively, yet again, and would not like to speak with Ivy Swaffer on yet another remote day, so they rescheduled the meeting for Thursday May 22nd, 2025, my termination date. Jazmin cancelled the meeting set for May 22nd, 2025 while I was at work, but told me that the purpose for the meeting would happen the following week via email, but Ivy rescheduled for the same day.

I am filing this complaint against the Defendant's: US Fertility, Ivy

Swaffer, for illegal discriminatory retaliation acts and disregard for me and my needs as an employee and defaming of my reputation with US Fertility. For retaliation and emotional damage, and falsifying facts, leading to my termination. I sat quietly and listen to HR speak while they terminated my employment via teams, gathered my things quietly, gave Lauren my badge and key, found where someone moved the chair stool and showed it to Lauren, and left peacefully and quietly.

## Demand for Relief

The Defendants are responsible for a sum of $76,700, for wrongful termination, breach of contract, defamation, flagrant and morally unacceptable conduct, emotional distress, lost wages, lost benefits, lost future earnings, job search costs, court and service cost, vicarious negligence, retaliation and race discrimination, harassment in: general, compensatory, expectation, punitive, emotional anguish, consequential. Their claims are all speculation, taken out of context, and not the legal responsibility of the Plaintiff. There is no evidence of coaching, no evidence of complaints from patients, no evidence of wrongdoing by the Plaintiff, no evidence of unprofessionalism, no evidence of hostility in the workplace, and no evidence of theft; of which lead to coaching.

## Recently – Department of Labor and Employment

I filed a claim to re-open my account with the Department of Labor and Employment and a representative called me on Monday, 06/02/25 to say they *may be able to help* me next month starting July 13th, 2025. After my employment termination I was sent a document from Jazmin Hong – HR Generalist, prepared by HR Generalist Jazmin Kurpin -- who carried out the teams meeting for my dismissal – A form that says that I voluntarily quit for cause and it included a non-disclosure agreement, stating that I will refrain from speaking about my time at SGF with anyone. Jazmin knows that my employment was terminated, and I am not sure why she has prepared the file that way. I have *not signed the documents*, and I was able to give a copy to the Department of Labor to keep them in file, without having to sign them first. I have recently begun school on Monday, May

19th,2025 to complete my bachelor's degree program because I have not been able to maintain long-term employment due to repeated discrimination and layoffs. My resume experience now shows that I work for different employers 6-8 months at a time. I have rent, a car loan, car insurance, electricity, internet, and miscellaneous bills to pay, all while now having to go to school and look for work. This has all added to my stress and it feels unnecessary for the Defendant's to have put me through this when I would have gladly worked remotely from home to avoid all complaints made about me by the SGF nursing staff.

## US Fertility Policy Breaches

Retaliation is unlawful only if the employer intended to act against the employee for protected activity, or if the employer had a **policy or practice** that did so regardless of any intent.

**U.S Fertility – Company Polices**
In the event of a conflict between state or local laws and policies contained in this document, state or local law applies.

Pursuant to the federal Defend Trade Secrets Act of 2016 (18 U.S.C. § 1833(b)), the following notice is hereby given by the Company: An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that—(A) is made—(i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding,

**US Fertility - BUSINESS ETHICS AND CONDUCT** Pg. 18-19
The Company *will comply with all applicable laws and regulations* and expects its directors, officers, and employees to conduct business in accordance with the letter, spirit, and intent of all relevant laws and to refrain from any illegal, dishonest, or unethical conduct.
Nothing in this Employee Handbook or in any Company contract, policy, or

practice prevents employees from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that employees have reason to believe is unlawful. Employees must report any such acts to a supervisor or Human Resources as soon as possible, so that the Company can promptly investigate and take responsive action.

**US Fertility - RELATIONSHIPS IN THE WORKPLACE** Pg. 14 (Handbook)
**US Fertility - EMPLOYEE CONDUCT AND WORK RULES** Pg. 21-23 (Handbook)
**US Fertility – SMOKING** pg. 25 (Handbook)
**US Fertility - DRESS AND GROOMING STANDARDS** Pg. 26 (Handbook)
**US Fertility - OPEN DOOR POLICY** Pg. 14-15 (Handbook)
**US Fertility - Separation of Employment** Pg. 50 (Handbook)
**US Fertility** - **ANTI-BULLYING POLICY** Pg. 13 (Handbook)

**US Fertility - COMPLIANCE REPORTING** 7.1 Reporting Compliance Concerns You are required to report any actual or perceived instances of non-compliance, including actual or perceived violations of federal or state laws, rules, regulations, policies and procedures, or this Code of Conduct. Reports regarding compliance issues are treated confidentially and will be shared with others only on a need-to-know basis.
Response and Corrective Action Following any investigation into a compliance issue, US Fertility will determine whether a compliance violation has occurred and what corrective action to take, if any. US Fertility will determine an appropriate corrective action plan. Any such corrective action plan will be made in accordance with Company policies and procedures and will include ***remedial steps*** to address any identified compliance violations, as well as the ***re-education*** (coaching) of US Fertility and its affiliated practices' personnel as appropriate.

**US Fertility - Non-Retaliation**
US Fertility prohibits retaliation, retribution or harassment in any manner against an individual who in good faith reports a compliance concern or cooperates with a compliance investigation. US Fertility will investigate all suspected acts of retaliation, retribution or harassment, and will take appropriate action in

accordance therewith. If, however, an individual ***purposefully*** falsifies a report, makes ***misrepresentations*** in connection with a report, makes false or misleading statements during an investigation, breaks the law, or violates company policies or procedures, then such individual will not be protected by the non-retaliation policy and will be subject to disciplinary action, up to and including termination.

**US Fertility - HARASSMENT, DISCRIMINATION, AND RETALIATION PREVENTION POLICY** Page. 9 (Handbook)
The Company is committed to maintaining a work environment free from harassment, discrimination, retaliation and disrespectful or other unprofessional conduct based on race, color, age (over 40), gender, sexual orientation, national origin, ancestry, citizenship, religion, marital status, registered domestic partner status, military and veteran status, sex, physical or mental disability, medical condition, genetic information, and any other basis protected by federal, state, or local law, ordinance or regulation. It also prohibits discrimination, harassment, disrespectful or unprofessional conduct based on the perception that an individual has any of those characteristics or is associated with a person who has or is perceived as having any of these characteristics. In addition, the Company prohibits retaliation against individuals who raise complaints of discrimination or harassment or who participate in workplace investigations. All such conduct violates Company policy.

**US Fertility - Complaint Procedure** Pg. 12-13 (Handbook)

The Company ***will conduct a fair, timely, and thorough investigation of any complaint of unlawful or prohibited harassment, discrimination or retaliation, in accordance with all legal requirements***. All parties will be provided with appropriate due process, and the Company will reach reasonable conclusions ***based on the evidence collected***.

Complaints will be:

- Responded to in a timely manner
- Kept confidential to the extent possible
- Investigated impartially by qualified personnel in a timely manner

- Documented and tracked for reasonable progress
- *Given appropriate options for remedial action and resolutions*
- Closed in a timely manner

## Breaches of States Law

C.R.S 24-34-402 - **(1)** It is a discriminatory or an unfair employment practice:

**(I)**For an employer to refuse to hire, to discharge, to promote or demote, to harass during the course of employment***, or to discriminate in matters of compensation, terms, conditions, or privileges of employment against any individual otherwise qualified*** because of disability, ***race***, creed, color, sex, sexual orientation, gender identity, gender expression, marital status, religion, age, national origin, or ancestry.

**(II)**

- With regard to a disability, it is not a discriminatory or an unfair employment practice for an employer to refuse to hire, to discharge, or to promote or demote an individual with a disability if there is no reasonable accommodation that the employer can make with regard to the disability that would allow the individual to satisfy the essential functions of the job and the disability actually disqualifies the individual from the job.

**Section 24-34-405 (a)**

In addition to the relief authorized by section 24-34-306 (9), the commission or the court may order affirmative relief that the commission or court determines to be appropriate, including the following relief, against a respondent who is found to have engaged in an unfair or discriminatory employment practice:

**(I)**

Reinstatement or hiring of employees, with or without back pay. If the commission or court orders back pay, the employer, employment agency, or labor organization responsible for the discriminatory or unfair employment practice shall pay the back pay to the person who was the victim of the practice.

**(II)**

Front pay; **or**

**(III)**

Any other equitable relief the commission or court deems appropriate.

Federal Law

Title VII of the Civil Rights Act of 1964(a)(1)

Thank you,

Reber K. Kellam

Reber K Kellam

June 4th, 2025